The appellees, whom we will hereafter refer to as the complainants, filed their bill of complaint in the Circuit Court of Dade County, against the appellant and others for the foreclosure of a mortgage which was given by J. D. Chason and his wife Meda T. Chason, to the complainant Audrey M. Smith, to secure the payment of three notes of J. D. Chason, payable one (note No. 1), two (note No. 2) and three (Note No. 3) years after date respectively. It seems that after the execution and delivery of the mortgage, Emma V. Whyel, wife of George Whyel, became the owner of the land and when note 1 matured it was paid by her. When note number 2 fell due, the complainant Audrey M. Smith, accompanied by her husband, Albert F. Smith, went to the home of the Whyel's for payment. They saw Mrs. Whyel and she sent them to her husband at his office. The appointment with Mr. Whyel was made through a stenographer, presumably in his office. Mr. Whyel stated to complainants that he would take care of the note if Mrs. Smith would indorse it without recourse. Mrs. Smith and her husband testified that Whyel was then asked if such indorsement would affect the value of the remaining note *Page 973 
numbered 3 in any way, and that they were assured by him that it would not. The defendant Whyel testified that he had no such conversation with them, but that he stated to them in effect that he wanted the note assigned instead of cancelled because he was making payment and he wanted the note; that he supposed it had some value and that he had a way to collect on it some time or other and the note was finally indorsed without recourse by Mrs. Smith. Prior to the filing of the bill of complaint, Whyel made no effort to collect the note from the makers, but in his answer to the bill he submitted that the mortgage was held by the complainants as security for the note held by him and for his use and benefit. He now contends that inasmuch as he held note numbered 2 as indorsee, it has priority over note numbered 3 and should be satisfied out of the mortgaged property. The record is silent as to whether Mrs. Whyel assumed and agreed to pay the mortgage at the time she acquired title to the property described in that instrument. She in any event took title subject to the mortgage lien. Whether or not she assumed or agreed to pay off the mortgage, she had her title to protect and it was to her manifest interest to either pay the notes herself or have someone pay them for her and thereby either discharge them or become subrogated to the rights of the payee as against the maker, but not as against the property. 19 R.C.L. 477, 503; The Marianna National Farm Loan Association v. Braswell, 95 Fla. 510,116 So. 639; Boley v. Daniel, 72 Fla. 121, 72 So. 644, L.R.A. 1917A 734; Consolidated Naval Stores Co. v. Wilson, 82 Fla. 396, 90 So. 461, 21 A.L. R. 681.
When the complainants called upon Mrs. Whyel for payment, she sent them to her husband, George Whyel, *Page 974 
who in his answer to the bill of complaint says that he "paid note number 2" and that it was assigned to him. The complainants went to George Whyel at the suggestion of his wife, the owner of the land, for the payment of the note then due. They obtained the money on the note and though the payee, Mrs. Smith, indorsed the note without recourse, the master found that note numbered 2 was "paid by the defendant, George Whyel, and that the present owners and holders of the second note have no interest in the mortgage sought to be foreclosed, and that the second note herein referred to is not secured by the mortgage sought to be foreclosed." This report was approved by the chancellor. The court must have been of the opinion that it was paid by Mr. Whyel for and on behalf of his wife or that because of the circumstances connected with its indorsement the indorsee was estopped from asserting a right of subrogation to the security of the mortgage. Whether he paid it for and on behalf of his wife or with the purpose of acquiring it for himself, we cannot say after reviewing the testimony and carefully considering it with the pleadings that the decree of the lower court is clearly erroneous.
If George Whyel paid the note for and on behalf of his wife because of any assumption of liability on her part, it was discharged (Section 6872) (4786) Compiled General Laws of Florida, 1927; 3 R.C.L. 1281, 1269); but if she held the note as indorsee, she, as we have seen, became subrogated to the rights of the payee as against the maker, but not as against the land.
 "Subrogation is the substitution of one person in the place of another with reference to a lawful claim or right. Subrogation arises by operation of law where one having a liability or a right or a fiduciary relation *Page 975 
in the premises pays a debt due by another under such circumstances that he is in equity entitled to the security or obligation held by the creditor whom he has paid. This is called legal subrogation. Conventional subrogation depends upon a lawful contract and occurs where one having no interest in or relation to the matter pays the debt of another, and by agreement is entitled to the securities and rights of the creditor so paid." Boley vs. Daniel, supra; The Marianna National Farm Loan Association v. Braswell, supra.
 "The indorsee or transferee of a bill or note will be subrogated to the rights and remedies of the transferer against all parties to the note prior to himself, and to the benefit of all securities originally provided for the payment of the note, though there has been no actual transfer of the security to him." 27 A. E. Ency. of Law (2d Ed.) 232; Sheldon on Subrogation, (2d Ed.) 282.
If the payment made by George Whyel and the indorsement of the note by Mrs. Smith constituted a transfer of the note to the former in his own right, he took it with the rights of a "conventional" subrogee, but he had no greater right to enforce the security to the prejudice of Mrs. Smith in the collection of note N. 3, than he would have had if he had been a "legal" subrogee. Sheldon in his work on Subrogation (2d Ed.) on page 373 says that
 "No claim by subrogation, whether conventional or by operation of law, to the securities held or the remedies enjoyed by a creditor for the collection of his demand, can be enforced until the whole demand of the creditor has been satisfied. Until then there can be no interference with the creditor's rights or securities which might, even by possibility, prejudice or in any way embarrass him in the collection of the residue of his demand." See also pages 103, 172, and 127. *Page 976 
Here, it has been held that when the indorser of one of a series of notes secured by a mortgage, upon the failure of the maker to pay it, pays the note that he has indorsed, he becomes subrogated to the rights of the holder to enforce the mortgage by foreclosure, subject to the rights of such holder of the other notes to resort to the mortgage security. Miami Mortgage and Guaranty Co. v. Drawdy, 99 Fla. 1092, 127 So. 323.
Equity will not apply the principle of subrogation where to do so would deprive a party of a legal right. Boley v. Daniel, supra; Marianna National Farm Loan Association v. Braswell, supra.
If however the law were otherwise and note numbered 2 in the hands of George Whyel would have had under other circumstances a prior right to be satisfied out of the mortgaged property, there was evidence before the chancellor upon which he could base a finding that equitable considerations required that he subject the property to the payment of note numbered 3. See Kissimmee Everglades Land Co. v. Carr, 88 Fla. 388, 102 So. 335; Wilson v. Heyweird, 6 Fla. 171.
It is argued here that the master erred in not granting a motion to strike the testimony with reference to understanding and agreements as to effect of complainant's indorsing the note. This Court has repeatedly held that before the appellate court will consider such matters or objections, made before a master, the transcript must show that they were brought to the attention of the court and should also show the ruling of the court thereon. Skinner vs. Campbell, 44 Fla. 723, 33 So. 526; Stockton v. National Bank of Jacksonville, 45 Fla. 590, 34 So. 897; Pinney v. Pinney, 46 Fla. 559, 35 So. 95; Ocala Foundry 
Mach. Works v. Lester, 49 Fla. 347, 38 So. 56; Dallam v. Sanchez, *Page 977 56 Fla. 779, 47 So. 871; Terra Ceia Estates v. Taylor, 68 Fla. 261, 67 So. 169; Holmberg v. Hardee, 90 Fla. 787, 108 So. 211. The transcript does not disclose that this ruling upon the motion was brought to the attention of the chancellor and ruled upon by him.
Finding that the court committed no error in entering the final decree of foreclosure, the said decree is hereby affirmed.