**JOHN NORTH and IDA RINGLING NORTH, as Executors of the Estate of John Ringling, deceased, v. F. H. ALBEE.**

20 So. (2nd) 682      January Term, 1945

January 30, 1945      En Banc

Rehearing denied February 23, 1945

*John F. Burket,* for appellants.

*Williams & Dart,* for appellee.

CHAPMAN, C. J.:

Prior to June, 1935, John Ringling, F. H. Albee, A. E. Cummer, Jo Gill and Charles E. Schoff owned 592 shares of stock in the Bank of Sarasota. Ringling and Albee had large

sums on deposit with said bank. Financial difficulties of the bank necessitated the appointment of a liquidator by the State Comptroller. M. A. Smith was appointed, assumed control, and took the necessary steps to liquidate the bank. John Ringling died in December, 1936, when the appellants were appointed executors of the Estate of John Ringling, deceased.

On June 6, 1935, M. A. Smith, as liquidator of the Bank of Sarasota, obtained a joint and several decree in chancery against John Ringling, A. E. Cummer, F. H. Albee and Jo Gill in the sum of $71,526.75. The basis of the aforesaid decree was a double assessment upon the 592 shares of stock of the Bank of Sarasota. It is alleged that Charles E. Schoff was a non resident of Florida and died prior to the institution of the chancery suit and service of process was not obtained in the chancery case upon the executor of the Estate of Charles E. Schoff.

The liquidator, during the progress of liquidation, refused or declined to return or pay to John Ringling, F. H. Albee, or A. E. Cummer certain portions of the amount each had on deposit when the bank closed, but stated and represented that he was retaining said sums for the purpose of applying the money to the liquidation of the aforesaid final decree, although various depositors of the bank had been paid certain portions of the amount with the bank at the time of closing.

On December 13, 1935, the liquidator executed and caused to be recorded a document reciting the full payment of the final decree out of funds then on deposit with the bank appearing in the names of John Ringling, A. E. Cummer and F. H. Albee. In paying the final decree the liquidator used the sum of $44,445.02 of the money of John Ringling; the sum of $23,467.92 of the money of A. E. Cummer, and the sum of $3,790.01 of the money of F. H. Albee. The pro rata share of the final decree which should have been paid by each of the three was the sum of $23,904.31. The liquidator in the payment of the decree took from the deposit of John Ringling in excess of the said $23,904.31 the further or additional sum of $20,550.70. The liquidator, arbitrarily and against the consent of John Ringling, used the $20,550.70 of Ringling's

money with which to pay the debts of F. H. Albee and A. E. Cummer. Payment was made on December 13, 1935.

On February 16, 1943, more than seven years later, the executors of the John Ringling Estate filed in the Circuit Court of Sarasota County, Florida, a bill of complaint (which was later amended) against F. H. Albee seeking a decree of subrogation to the said final decree in so far as was proper to enforce collection of the money due the John Ringling Estate from the said F. H. Albee for that portion of the said F. H. Albee's pro rata share of the final decree arbitrarily paid by the liquidator out of the funds of John Ringling then on deposit with the Bank of Sarasota. The amended bill also prayed for an accounting. The involved facts are not in dispute, but a conflict of views arises on the application of the law to the admitted facts.

The grounds of appellee's motion to dismiss are viz: (1) the bill is without equity; (2) appellants' remedy is an action at law; (3) subrogation does not lie because the judgment has been satisfied and extinguished; (4) Ringling only paid his own judgment; (5) subrogation does not lie because Ringling was primarily liable; (6) Ringling's remedy was an action at law for contribution and said suit is now barred by the statute of limitations; (7) the seven year statute of limitations is here applicable; (8) the action did not accrue within three years; (9) the action did not accrue within four years; (10) plaintiffs are guilty of laches; other grounds appear but the recitation thereof is unnecessary. The chancellor below sustained the motion to dismiss the amended bill and plaintiffs below appealed.

This controversy can be disposed of by an answer to the following question posed by counsel for appellee viz: Where a judgment against several co-debtors who are each jointly and severally and primarily liable thereon was paid by one co-debtor in December, 1935, can said co-debtor (or his executors) maintain an action more than seven years thereafter against one of his other co-debtors by way of seeking subrogation?

It is settled that subrogation arises by operation of law where one having a liability or a right or a fiduciary relation

in the premises pays a debt due by another under such circumstances that he is in equity entitled to the security or obligation held by the creditors whom he paid. The Ringling Estate, having paid as shown by the record, the joint judgment against John Ringling, A. E. Cummer and F. H. Albee, then the executors of the Ringling Estate simply step into the shoes of the judgment creditor and may direct execution based on the judgment against the goods and property legally subject to execution and sale as owned by either R. E. Cummer or F. H. Albee, and in this manner have returned to the estate the amount or amounts paid by it in their behalf on the joint judgment. See Cuesta, Rey & Co. v. Newsom, 102 Fla. 853, 136 So. 551.

Pomeroy's Equity Jurisprudence, Vol. 4 (5th Ed.) 1072-74, par. 1419, states the rule thusly:

"Subrogation.—The surety who has paid or satisfied the principal's debt or obligation is entitled to be subrogated to and to have the benefit of all securities which may at any time have been put into the creditor's hands by the principal debtor, or which the creditor may have obtained from the principal debtor. By the fact of payment, the surety becomes an equitable assignee of all such securities, and is entitled to have them assigned and delivered up to him by the creditor in order that he may enforce them for his own reimbursement and exoneration. . . .

The remedy of subrogation has been granted to sureties much more favorably and extensively by the American equity jurisprudence than by the English. In England, prior to modern legislation, if a surety paid a contract which he executed jointly with his principal debtor, or paid a judgment recovered against him and his principal debtor, or paid a judgment recovered against him and his principal jointly, the contract or judgment was thereby ended and discharged and could not itself be enforced by the surety. The courts of all the American states, with very few exceptions, have extended the remedy of subrogation to such cases; they enable the surety to enforce such bond, or contract, or judgment immediately against the principal debtor, although the surety was himself directly liable. In other words, by the

English doctrine the surety became equitable assignee only of collateral securities; by the American doctrine he becomes equitable assignee, not only of collateral securities but of the principal undertaking."

The payment by the estate did not extinguish the joint judgment. When payment was made the law established an equitable assignment of the judgment to the party jointly liable who made payment upon the theory that equity considers as done that which should have been done. Our statutes of limitations are not applicable because the judgment paid off by appellants was good for twenty years, and it is this judgment that appellants are entitled to enforce. See Cuesta, Rey Co. v. Newsom, *supra;* Pomeroy's Equity Jurisprudence, Vol. 4 (5th Ed.) 1074, par. 1419 (*supra*); 50 Am. Jur. 724, par. 67; 60 C. J. 732, par. 40; Sands v. Durham, 99 Va. 263, 38 S. E. 145, 86 Am. St. Rep. 884; Morris v. Evans, 2 B. Monroe (Ky.) 84, 36 Am. Dec. 591; Eland v. Carter, 212 Ia. 777, 237 N. W. 52, 77 A.L.R. 448, 25 R.C.L. 1361, par. 45; American Surety Co. v. Bethlehem National Bank, 314 U. S. 314, 62 S Ct. 226, 86 L. Ed. 241.

Other questions are posed for adjudication by counsel for the respective parties. These questions were thoroughly covered in oral argument heard at the bar of this Court. Likewise they are ably presented in the briefs filed in the case. We have carefully considered the several contentions and the many authorities cited in support thereof. An examination of the order here challenged fails to disclose the reasons actuating the chancellor below in entering the order of dismissal, but it is reasonable to hold or conclude that it was his view that the statute of limitation, as contended for, was applicable to the controversy.

The order of dismissal is hereby reversed with directions for further proceedings in the lower court not inconsistent with the views herein expressed.

It is so ordered.

BROWN, THOMAS, ADAMS and SEBRING, JJ., concur.

TERRELL and BUFORD, JJ., dissent.

520

TERRELL, J., dissenting:

In June, 1935, M. A. Smith as liquidator, secured a judgment in a common law action against John Ringling, F. H. Albee, A. E. Cummer, and others. The judgment was paid in the main by John Ringling in December, 1935, and Ringling died in December, 1936. In February, 1943, more than seven years later, appellants who are executors of the estate of John Ringling, filed suit in equity seeking to be subrogated to the right of Albee in certain dividends described later in this opinion. A motion to dismiss the bill of complaint as amended was granted, and this appeal was prosecuted.

The basis of the common law suit was that Ringling and the other defendants owned 592 shares of stock in the Bank of Sarasota which was placed in the hands of M. A. Smith for liquidation and the judgment was for the double assessment on the stock to pay the obligations of the bank. At the time the bank closed, Ringling and Albee had large amounts on deposit. From time to time, the liquidator returned to the depositors' certain percentages of what they had on deposit when the bank failed, but refused to pay to Ringling and Albee any percentages, retaining theirs for the purpose of applying them on the judgment when the aggregate became sufficient for that purpose. It appears that in December, 1935, the dividends in favor of Ringling, Cummer, and Albee were sufficient to pay the judgment and the liquidator used the aggregate sums for that purpose. The amount of the judgment was $77,712.95 of which $44,455.02 was paid from the funds of Ringling, $23,467.92 from the funds of Cummer, and $3,790.01 from the funds of Albee.

Appellants contend that the pro-rate part of the judgment of each of the parties was $23,904.31, but that there was paid from the funds of Ringling in excess of his pro rata share the sum of $20,550.70, of which $20,114.30 was used in making up the sum of Albee due on the judgment and $436.39 was used in making up the part of Cummer due on the judgment. All of these payments were made with judicial sanction and without Ringling's consent.

The first question presented may be stated as follows: Where a joint judgment is secured against several codebtors and paid by one of them in December, 1935, can the debtor paying the judgment or his executors more than seven years later maintain a suit in equity against another codebtor by way of subrogation to recoup himself for the sum paid?

There being no dispute about the facts, it is quite evident that Ringling or his executors could have secured a common judgment against Albee or any of the joint debtors for whom he paid if action for that purpose had been started before the statute of limitations ran against it, so the answer to the questions turns on whether or not having let the bar of the statute run against them in law, they can thereafter assert their right to subrogation in equity.

Appellants contend that this question should be answered in the affirmative on the theory that while all the judgment debtors are liable severally to the owner of the judgment but as between themselves, the rule is different, that each joint debtor is regarded as the principal debtor for that part of the debt which he ought to pay and only secondarily liable for the share of other debtors.

It is clear that Ringling was one of the joint debtors, that he paid the major portion of the joint debt in December, 1935, and died in December, 1936. He had more than a year and his executors had had more than two years within which to assert his claim for contribution against the codebtor in law but failed to do so. They were therefore barred by the statute of limitations to bring an action at law to recover the sum paid for them.

The rule most generally approved in this country seems to be that a person by payment of the debt of another does not ipso facto become subrogated to the rights of the creditor; he only acquires a right to subrogation which must be actively asserted before subrogation can actually take place. In other words, a surety must take steps to enforce his right of subrogation within the period prescribed as a limitation to the enforcement of simple contracts, for this being merely an equitable right will not be enforced at the expense of a legal

one. 27 Am. Eng. Ency. of Law (2nd) 272; Junker v. Rush, 136 Ill. 179, 26 N. E. 499. .·

In Boley v. Daniel, 72 Fla. 121, 72 So. 644, and similar cases, this Court approved the rule that equity will not apply the principle of subrogation where to do so would deprive one of a legal remedy. In American Surety Company of New York v. Murphy, 152 Fla. 862, 13 So. (2nd) 442, we also held the general rule to be that where a party has a complete and adequate remedy at law and fails from any cause to rely on it, he will not be permitted to assert it in equity in the absence of a showing of fraud, accident or mistake or circumstances beyond his control.

For these reasons I find myself unable to agree with the opinion of Mr. Chief Justice CHAPMAN. I therefore dissent and am authorized to say that Mr. Justice BUFORD joins me in dissent.

BUFORD, J., concurs.