213 So.2d 15 (1968)
ALLSTATE LIFE INSURANCE CO., Appellant,
v.
Lovena WELDON, Administratrix of the Estate of Virgil Weldon, Deceased, Appellee.
No. 67-883.
District Court of Appeal of Florida. Third District.
July 23, 1968.
*16 Stephens, Demos, Magill & Thornton, Miami, for appellant.
Manners & Amoon, Miami, for appellee.
Before PEARSON, HENDRY and SWANN, JJ.
HENDRY, Judge.
This is an appeal by the defendant below, Allstate Life Insurance Co., from a final judgment in favor of the plaintiff's awarding recovery of $2800.00 plus costs and $1000.00 attorney's fees.
The plaintiff below was Lovena Weldon, administratrix of the state of Virgil Weldon, deceased. In 1965, Virgil Weldon, as buyer, executed a retail installment sales contract for the purchase of a new Mercury Comet automobile. As a part of the purchase price, he was charged $28.38 for credit life insurance. The insurance provided was a policy of group credit life insurance issued to Ford Motor Credit Company as policy holder by the appellant, Allstate Life Insurance Co. The insurance application contained the following paragraph:
"The person signing below upon whose life such insurance is to be provided, in order to induce Allstate Life Insurance Company to effect such insurance hereby declares that to the best of his knowledge and belief he is now in good health. * * *"
The application was signed and submitted by Weldon at the time the sales contract was executed, that is, on May 4, 1965.
The record on appeal contains evidence to show that between April 11 and April 29, 1965, Virgil Weldon was hospitalized due to a heart condition; that on April 29, he was released from the hospital and he returned to his normal activities, including his job; and that subsequent to his release, he continued under the care of his physician, who prescribed certain medication which Weldon took continuously. On July 19, 1965, *17 Virgil Weldon succumbed to a condition described as "arteriosclerotic heart disease".
Allstate Life Insurance Co. denied a claim under the credit life policy and returned the $28.38 premium to Mrs. Weldon. The automobile in question having been repossessed by Ford Motor Credit Company, Mrs. Weldon, as administratrix of her deceased husband's estate, filed suit in the Civil Court of Record to recover the proceeds of the policy. From a judgment in favor of the plaintiff, Allstate Life Insurance Co. appeals.
Appellant raises the contention that since it was a condition precedent to the policy becoming effective that the insured be in good health and since Weldon misrepresented the state of his health in the application, there can be no coverage under the policy. We must reject this contention. The judgment appealed is based upon a jury verdict which is entitled on appeal to all inferences in its favor. Viewing the evidence contained in the record in the light most favorable to the appellee, we can not say that there was not substantial competent evidence upon which the jury as reasonable men could have based their verdict Midstate Hauling Co. v. Fowler, Fla. 1965, 176 So.2d 87; Booker v. Lima, Fla.App. 1966, 182 So.2d 642; Bowser v. Harder, Fla.App. 1957, 98 So.2d 752. There is undisputed evidence that Weldon resumed full time employment and carried on other normal activities subsequent to his release from the hospital, and upon several occasions, he even worked overtime. From this and from other evidence adduced, the jury quite possibly could have concluded that Virgil Weldon believed himself to be in good health at the time he made application for the credit life insurance. Such a belief was all that was required in the application provisions. Consequently, this Court will not substitute its judgment for that of the jury.
Appellant further contends that Lovena Weldon, as administratrix of the estate of her deceased husband, is not the proper party to bring the instant suit. In support of its contention in this regard, appellant argues that, under the terms of the policy, Ford Motor Credit Company was the named policyholder; that the insured, Weldon, was not a policyholder and hence had no right to assign the policy or to designate beneficiaries; and that according to § 627.0402(4), Fla. Stat., F.S.A., the proceeds of group credit life insurance policies "shall be payable to the policyholder", precluding a suit by the estate of the deceased insured to collect the benefits of the policy.
It is true that one purpose of the credit life insurance policy is to protect the creditor against the contingency of the debtor's demise by making available, upon the happening of that event, the sum necessary to satisfy the remaining obligation. However, such policies perform an important service to the debtor as well, for by paying for credit life insurance, the debtor is secure in the knowledge that, should some unforeseen event claim his life, the legatees or heirs of his estate will not be called upon to satisfy the outstanding obligation, lest they face the loss of the financed article, at a time when they are least likely to be able to do so. In essence, then, the insurer contracts to accept the risk that the obligation will not be satisfied before the debtor's demise.
In the instant case, the obligation outstanding at the time of Virgil Weldon's death was satisfied when the automobile was repossessed by the Ford Motor Credit Company. The question before us is whether the satisfaction of the debt by the estate of the debtor releases the insurer from liability for its obligations under the policy. We are of the opinion that it does not. Our conclusion in this regard is based upon the application of legal principles comprising the doctrine of subrogation. As stated in the opinion *18 in the case of Ulery v. Asphalt Paving, Inc., Fla.App. 1960, 119 So.2d 432:
"Subrogation, a creation of equity, is founded on the proposition of doing justice without regard to form, and was designed to afford relief where one is required to pay a legal obligation which ought to have been met, either wholly or partially, by another. Trueman Fertilizer Co. v. Allison, Fla., 81 So.2d 734. The right of subrogation has been sustained in almost every conceivable type of transaction where the party invoking it has been required to pay a debt for which another is primarily answerable, and which in equity and good conscience the other ought to pay. * * *"
And in the case of Goodwin v. Schmidt, 149 Fla. 85, 5 So.2d 64, the doctrine is further explained:
"Subrogation is either legal, that is, the right arising by operation of law, or else it is conventional, in which case the right arises by reason of contract between the parties.
"In Boley v. Daniel, 72 Fla. 121, 72 So. 644, 645, L.R.A. 1917A, 734, we held:
`Subrogation is the substitution of one person in the place of another with reference to a lawful claim or right.
`Subrogation arises by operation of law, where one having a liability or a right or a fiduciary relation in the premises, pays a debt due by another under such circumstances that he is, in equity, entitled to the security or obligation held by the creditor whom he has paid. This is called "legal subrogation."'"
See also: North v. Albee, 155 Fla. 515, 20 So.2d 682, 157 A.L.R. 490; Dodge v. Kistler, 140 Fla. 209, 191 So. 301.
In applying the above principles to the facts of the instant case, we see that the creditor has elected to repossess the automobile, which would normally become an asset of the estate, in order to satisfy the debt owed to it by Weldon, and subsequent to his death, by the insurer. That is, the estate, having a right in the premises, has paid a debt due by another, the insurer, under such circumstances that it is entitled to be substituted in place of the creditor with reference to the lawful claim of the creditor against the insurer.
We have examined the remaining contentions raised by appellant and have found all save one to be without merit. Upon the authority of Hardy v. American Southern Life Insurance Company, Fla. 1968, 211 So.2d 559 (Opinion filed May 15, 1968), that portion of the judgment appealed awarding appellee attorney's fees in the sum of $1,000.00 is reversed. The remainder of the judgment stands affirmed.
Affirmed in part; reversed in part.