395 So.2d 296 (1981)
DOLAN TITLE & GUARANTY CORPORATION, Appellant,
v.
HARTFORD ACCIDENT & INDEMNITY COMPANY and Stephen R. Magyar, Appellees.
HARTFORD ACCIDENT & INDEMNITY COMPANY, Appellant,
v.
DOLAN TITLE & GUARANTY CORPORATION and Stephen R. Magyar, Appellees.
Nos. 80-793, 80-812.
District Court of Appeal of Florida, Fifth District.
March 18, 1981.
*297 Robert W. Olsen, Orlando, for Dolan Title & Guaranty Corp.
Norman L. Hull, Orlando, for Hartford Acc. & Indem. Co.
Thomas M. Burke of Rumberger, Kirk, Caldwell & Cabaniss, Orlando, for Stephen R. Magyar.
COBB, Judge.
These are two timely consolidated appeals from a final judgment in favor of Hartford Accident & Indemnity Company (Hartford) against defendant Dolan Title & Guaranty Corporation (Dolan Title). Dolan Title appeals the trial court's finding of negligence on its part in preparation of a check at a real estate closing, and in denying Dolan Title's cross-claims against Magyar; while in the cross-appeal Hartford appeals the trial court's denial of recovery against Magyar.
In January of 1973, John Arena was appointed guardian of his incompetent wife, Rosina Arena. Hartford was surety on two guardianship bonds procured by Steven Magyar, an attorney, in the process of seeking court permission for the sale of a residence owned by John and Rosina Arena as tenants by the entirety. Prior to this, John Arena contracted to sell the residence to buyers represented by Magyar. Dolan Title, as title company and closing agent, received a contract for sale and purchase signed by John Arena as seller, with instructions to prepare the necessary title papers to close under the terms of the contract.
At the closing, the entire proceeds of the sale were delivered to John Arena in a check made payable to John Arena individually and with no indication of his capacity as guardian for his incompetent wife, even though the order of the probate court had specifically provided that one-half of the proceeds of the sale must go to the guardianship. Thereafter, John Arena deposited the check in an account in the names of John Arena and Philip Maira, his nephew; these funds were transferred to a New York bank and deposited in the same type of account; in February of 1974 the funds were withdrawn by Maira and the account was closed. John Arena predeceased the ward, his wife, in February of 1974; Rosina died in May of 1974.
The personal representative of the ward and the heirs of Rosina Arena brought suit against Hartford on its guardianship bonds. That suit was settled in November of 1976, for an amount less than the loss claimed, in consideration for an assignment of the rights of the estate against Dolan Title for negligence.
Hartford commenced the present action in November of 1976 against Dolan Title for negligence; and against Magyar for negligence, and further asserting claims based on theories of third-party beneficiary and subrogation. Dolan Title cross-claimed against Magyar. A clerk's default was entered against third-party defendant Maira.
Trial was held before the court without a jury. The court found Hartford authorized to maintain a suit against Dolan Title by virtue of the release and assignment; that Hartford was not entitled to maintain any direct action against Magyar, since it received no assignment of that right; that John Arena retained Magyar to represent the guardianship in proceedings then pending in the Circuit Court of Orange County, *298 Florida, to petition and receive an order of sale of certain jointly-held properties owned by the guardian and the incompetent; that Magyar filed such a petition for leave to sell the real estate; that Magyar caused an inventory to be filed in the guardianship proceedings and secured from the circuit court an order authorizing sale, which order contained specific directions as to the manner in which the net proceeds from the sale should be disbursed, that is, one-half to John Arena, individually, and one-half to John Arena as guardian; that Dolan Title was the closing agent for the sale of the property and received a letter from the broker outlining matters incident to the closing and, in particular, in paragraph 1, advising Dolan Title that there was a guardianship proceeding and that there would be an order for sale required before the closing could take place; that Dolan Title was negligent in the handling of its closing by failing to make one-half of the net proceeds from the sale of the home payable to John Arena as guardian of the estate and person of Rosina Arena, incompetent, and that such negligence on the part of Dolan Title was the direct proximate cause of the loss to the estate; that Dolan Title knew or should have known of the condition of the order of sale as set forth by the circuit judge in his order authorizing sale; that Magyar did attend the closing and made no objection to the form of the check issued for the proceeds of the sale and did not object to the check being drawn to John Arena for the entire proceeds, nor insist upon the check being made payable jointly to John Arena individually and as guardian of the estate of Rosina Arena, nor insist that the net proceeds be distributed in two separate equal checks; that Magyar did request that the check first drawn for the net proceeds be redrawn so that certain items of expense incurred in seeking the order from the probate judge, including his own attorney's fees, be deleted and separate checks drawn to those individuals; that Magyar, having filed an appearance in the probate proceedings as attorney for the guardian of the estate of Rosina Arena without filing an indication of his limited type appearance was deemed to have filed a general appearance as additional attorney for the guardian and could not limit his responsibility unilaterally and could be relieved from further responsibility to the estate only by court order, which was never sought or entered; that if the check for the net proceeds from the closing had been made either jointly to John Arena individually and as guardian, or a check for one-half of the proceeds had been made to John Arena as guardian, then the estate would have been protected from the unauthorized disbursal of the funds by virtue of the fact that a guardianship account required the signatures of two individuals, one of which was the attorney (not Magyar); that both Dolan Title and Magyar were negligent and, therefore, Dolan Title was not entitled to indemnification from Magyar; that Dolan Title was entitled to a cross-judgment against the third-party defendant, Maira, in the event it paid off any judgment rendered in the cause; that Hartford was entitled to recover from Dolan Title a sum equal to that paid for settlement of Rosina Arena's estate's claim on the surety bonds, plus costs. After the trial court entered its findings of fact and directed the attorney for Hartford to prepare final judgments in accordance with that order, Dolan Title moved for rehearing and stated that it was entitled to contribution, pursuant to the Uniform Contribution Among Tortfeasors Act, against defendant Magyar. This motion for rehearing was denied.
Dolan Title raises the following three points on appeal:
(1) Was the failure of Dolan Title to prepare the closing check payable to "John Arena, Individually and as Guardian of the Estate of Rosina Arena, Incompetent" compensable negligence to support a judgment in favor of Hartford?
(2) Did the lower court err in denying Dolan Title's cross-claim against Magyar for negligence?
(3) Did the court err in denying Dolan Title's claim for contribution against Magyar after finding both parties negligent?
*299 Dolan Title argues that it was not negligent in preparing and delivering the disbursement check payable only to John Arena individually, and that the trial court erred in finding Dolan Title's negligence to be the direct proximate cause of the loss of the monies to the estate on the grounds that the criminal act of embezzlement by the fiduciary guardian was not reasonably foreseeable. Dolan Title cites the general rule that there is no duty to protect against the criminal conduct of third parties, unless the criminal acts are reasonably foreseeable. See Prosser Law of Torts § 33 at 173-176 (4th ed. 1971). Hartford argues that a closing agent who undertakes to supervise a closing is obligated to do so in a reasonably prudent manner, Florida Southern Abstract & Title Co. v. Bjellos, 346 So.2d 635 (Fla. 2d DCA 1977); and that there can exist a legal causal connection between a person's negligent failure to take reasonable precautions and damages resulting from a third party's criminal acts. See Vining v. Avis Rent-A-Car Systems, 354 So.2d 54 (Fla. 1978); Nicholas v. Miami Burglar Alarm Co., Inc., 339 So.2d 175 (Fla. 1976); Orkin Exterminating Co., Inc. v. Culpepper, 367 So.2d 1026 (Fla. 3d DCA 1979). Hartford argues that in light of the statutes requiring a guardian to post a bond and the nature of the fiduciary relationship between the guardian and ward, that Dolan Title knew or should have known of the temptation which exists for a person who has complete control over the property of another. Hartford argues this knowledge required Dolan to take reasonable precautions to safeguard the proceeds of the real estate transaction and to comply with the terms of the court's order authorizing sale. Magyar argues that Dolan was negligent, see Bjellos, but that neither Dolan nor Magyar was the proximate cause of the loss or damage to Hartford.
The Florida Supreme Court in Gibson v. Avis Rent-A-Car System, Inc., 386 So.2d 520 (Fla. 1980) stated:
The question whether the harm that occurs was within the scope of the risk created by the defendant's conduct may be answered in a number of ways.
First, the Legislature may specify the type of harm for which a tortfeasor is liable... . Second, it may be shown that the particular defendant had actual knowledge that the same type of harm has resulted in the past from the same type of negligent conduct.... Finally, there is the type of harm that has so frequently resulted from the same type of negligence that "`in the field of human experience' the same type of result may be expected again." (citations omitted) (emphasis in original).
386 So.2d at 522-523. We are faced with the third situation. As outlined in Firestone Tire & Rubber Co., Inc. v. Lippincott, 383 So.2d 1181 (Fla. 5th DCA 1980):
A foreseeable consequence is one which a prudent man would anticipate as likely to result from an act.... The consequences that a prudent man would anticipate as likely to result from an act are those consequences that happen so frequently that they may be expected to happen again and are, therefore, probable consequences... . Foreseeable consequences are not "what might possibly occur." (citations omitted).
383 So.2d at 1182. We hold that John Arena's misappropriation of funds was not reasonably foreseeable; that his acts were merely possible and not probable. Although the question of whether an intervening cause is foreseeable is for the trier of fact, Gibson v. Avis Rent-A-Car System, Inc., there was insufficient evidence to support the conclusion that Arena's misappropriation was foreseeable. Magyar testified that John Arena never acted in any fashion or made any statement that led Magyar to believe that he would conduct himself in any manner other than what was required by Arena's undertaking as guardian. There was no evidence that Arena gave any sign that he would misappropriate the funds of his ward, until he did so. Although a bond is required and temptation is present, a guardian is one the law has entrusted, after hearing and court appointment, with the custody of the person or property, or both, *300 of an incompetent. Before exercising his authority as guardian, every guardian takes an oath that he will faithfully perform his duties as guardian. The "probable" is that a guardian will live up to his oath. Compare, Pacelli v. Kloppenberg, 65 Ill. App.3d 150, 22 Ill.Dec. 250, 382 N.E.2d 570 (Ill. 1st DCA 1978).
As to Dolan Title's Points II and III, we need not reach these issues in light of our holding in regard to foreseeability. Since Hartford was not entitled to recover from Dolan Title, Dolan Title will have no claim for indemnification or contribution against Magyar in this action.
Cross-appellant Hartford raises the issue of whether the trial court erred in denying Hartford's action against Magyar under either a third-party beneficiary or subrogation theory. We hold the trial court committed harmless error in this regard. Magyar could not be liable for the same reason Dolan Title could not  a lack of foreseeability or proximate cause. The lack of an assignment would not prevent Hartford from maintaining a common-law subrogation action against Magyar. See North v. Albee, 155 Fla. 515, 20 So.2d 682, 157 A.L.R. 490 (1945); Dantzler Lumber & Export Co. v. Columbia Cas. Co., 115 Fla. 541, 156 So. 116, 95 A.L.R. 258 (1934); 73 Am.Jur.2d Subrogation § 111 (1974). Subrogation on the part of Hartford to the rights of the estate of Rosina Arena pro tanto the amount paid on the guardianship bond would not prejudice the estate of Rosina Arena in seeking the difference. See Dantzler Lumber & Export Co.
Accordingly, that portion of the judgment in favor of Hartford Accident & Indemnity Co. against Dolan Title & Guaranty Corporation is reversed, which renders moot Dolan Title's second and third points on appeal as to indemnification or contribution from Magyar. As for Hartford's cross-appeal, we affirm as harmless error the trial court's refusal to entertain Hartford's claim against Magyar.
REVERSED.
SHARP, J., concurs.
DAUKSCH, C.J., concurs in part, dissents in part, with opinion.
DAUKSCH, Chief Judge, dissenting in part; concurring in part:
I respectfully dissent. I think Dolan's having negligently issued the check without the guardianship safeguards was a proximate cause of the injury. It was not the proximate cause because other factors enabled the theft but the law does not require sole proximate cause in order to assess responsibility. I would affirm the trial judge's findings and conclusions of law on this point.
I concur with the majority in regard to Hartford's right to sue Magyar. Of course, that does not mean we decide the outcome of the suit.