In re William E. HOEY, Debtor.

James A. Bonfiglio, Esq. and James A. Bonfiglio, P.A., Plaintiffs,

v.

William E. Hoey, and Shirley M. Hoey, Donald Baltrus, Mortgage Works Unlimited, Inc., Gordon Kenyon, Rochelle Kenyon, Gary W. Fox, Francis v. Childs, Trustee, and Deborah Menotte, Trustee, Defendants.

Bankruptcy No. 00–35503–BKC–SHF. Adversary No. 02–3064–BKC–SHF–A.

United States Bankruptcy Court, S.D. Florida.

Sept. 22, 2005.

Beckett & Lee LLP, Malvern, PA, James A. Bonfiglio, Boynton Beach, FL, Leslie Gern Cloyd, Ft. Lauderdale, FL, Thomas D. DeCarlo, West Palm Beach, FL, Dario D. Diaz, Tampa, FL, Steven Ellison, West Palm Beach, Peter Max Fallon, Tampa, FL, James L. Fly, Orlando, FL, Kenneth M. Jones, Plantation, FL, Chad S. Paiva, Stuart, FL, Shamila Sharma, Tampa, FL, for creditors.

William E. Hoey, Charlotte, NC, pro se.

Deborah Menotte, West Palm Beach, FL, trustee.

### ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR FINAL SUMMARY JUDGMENT AS TO COUNT I OF THE AMENDED COMPLAINT AND DENYING IN PART AND GRANTING IN PART THE CHILDS GROUP'S CROSS-MOTION FOR SUMMARY JUDGMENT

STEVEN H. FRIEDMAN, United States Bankruptcy Judge.

THIS CAUSE came on to be heard on February 2, 2005 upon the Plaintiffs' Motion for Final Summary Judgment and the Defendants' Motion for Partial Summary Judgment. The bankruptcy case of *William E. Hoey*, Case No. 00–35503–BKC–SHF was commenced on December 11, 2000, with the debtor's filing of his volun-

tary chapter 7 petition. Among the creditors listed in the debtor's bankruptcy schedules are James A. Bonfiglio, Esq. and James A. Bonfiglio, P.A. (collectively, "Plaintiffs") as being owed an unsecured debt in the amount of $200,000.00. On March 7, 2002, the instant adversary proceeding was filed by Plaintiffs, seeking a determination of the rights of the respective parties to the adversary proceeding as against the real property located at 345 Lantern Bay Drive, Jupiter, Florida, and establishing the priority of the charging lien asserted by Plaintiffs as being superior to the property interests of any of the Defendants to this adversary proceeding. On February 26, 2004 this Court entered its Order Partially Granting Plaintiff's Motion for Partial Summary Judgment as to Count I of the Amended Complaint and Denying the Childs Group's Cross Motion for Summary Judgment (C.P. 79), determining that the charging lien of Plaintiffs has priority over the mortgage held by Francis V. Childs, Gary Fox, Gordon Kenyon, and Rochelle Kenyon ("Defendants"). Plaintiffs now seek turnover of the remaining proceeds generated from the sale of the debtor's real property and additionally seeks interest, costs and attorney's fees pursuant to 11 U.S.C. § 506(b). The Court, having considered the testimony, argument presented and being otherwise duly advised in the premises, **grants** in part Plaintiffs' Motion for Final Summary Judgment and **grants** in part the Defendants' Motion for Partial Summary Judgment.

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334, 157(b)(1) and 157(b)(2)(I). This is a core matter in accordance with 28 U.S.C. § 157(b)(2)(I). Federal Rule of Civil Procedure 56(c), made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7056, provides that "the judgment sought shall be rendered forth-with if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." F.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–8, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), *Rice v. Branigar Org., Inc.*, 922 F.2d 788 (11th Cir.1991); *In re Pierre*, 198 B.R. 389 (Bankr.S.D.Fla.1996). Rule 56 is based upon the principle that if the court is made aware of the absence of genuine issues of material fact, the court should, upon motion, promptly adjudicate the legal questions which remain and terminate the case, thus avoiding delay and expense associated with trial. *See United States v. Feinstein*, 717 F.Supp. 1552 (S.D.Fla.1989). "Summary judgment is appropriate when, after drawing all reasonable inference in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Murray v. National Broad. Co.*, 844 F.2d 988, 992 (2d Cir.1988).

The legal standard governing the entry of summary judgment has been articulated by the United States Supreme Court in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In *Anderson*, the Supreme Court stated that the standard for summary judgment mirrors the standard for directed verdict under Federal Rule of Civil Procedure 50(a), which provides that the trial judge must direct a verdict if there can be but one reasonable conclusion as to the verdict. *Id.* at 250, 106 S.Ct. 2505. The Court explained that the inquiry under summary judgment and directed verdict are the same: "whether the evidence presents sufficient disagreement to require submission

to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

In order to defeat a motion for summary judgment under this standard, the non-moving party must do more than simply show that there is some doubt as to the facts of the case. *Id.* at 252, 106 S.Ct. 2505. Rule 56 must be construed not only with regard to the party moving for summary judgment but also with regard to the non-moving party and that party's duty to demonstrate that the movant's claims have no factual basis. *Id.* "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could find for the [non-moving party]." *Id.* Thus, the non-moving party must establish the existence of a genuine issue of material fact and may not rest upon its pleadings or mere assertions of disputed fact to prevent a court's entry of summary judgment. *See First Nat. Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *In re Pierre,* 198 B.R. 389 (Bankr.S.D.Fla. 1996).

William H. Hoey and Shirley M. Hoey ("the Hoeys") were the owners of certain real property located at 3451 Lantern Bay Drive, Jupiter, Florida, 33477 ("Lantern Bay property"), more specifically described as:

> Lot 40, of LANTERN BAY AT JONATHAN'S LANDING, P.U.D., according to the Plat thereof recorded in Plat Book 54, Pages 199 and 200, Public Records of Palm Beach County Florida.

On March 14, 2002, the Trustee, after seeking the permission of the Court, sold the Lantern Bay property. The Trustee is presently holding approximately $380,000.00 in net proceeds from the sale of the Lantern Bay property.

On March 15, 2002, the Plaintiffs filed the above-styled adversary proceeding alleging that they held an attorney's charging lien against the proceeds from the sale of the Lantern Bay property. The following facts have been stipulated. In February 1993, the Hoeys were named as Defendants in state court proceedings instituted in the Circuit Court of the 15th Judicial Circuit, in and for Palm Beach County, Florida, by the Resolution Trust Corporation ("RTC"), Case No. 93–2026 AW, wherein RTC sought to foreclose on the Lantern Bay property. In April of 1993, the Hoeys retained Plaintiffs to defend them in the foreclosure action. A settlement statement bearing the signatures of the Hoeys and Plaintiffs was executed on April 25, 2000 (Ex. 6 to Joint Stipulation of Facts—C. P 72). The settlement statement addressed the issue of attorney's fees in the event that the litigation ended favorably to the Hoeys. According to the settlement statement, the total sum of $203,160.49 in attorney's fees was to be "paid from refinance and/or sale of the home." On September 6, 2000, the state court entered an Order Granting Hoey's Motion for Final Summary Judgment on the Hoey's Affirmative Defenses and Final Judgment Quieting Title in the Hoeys Free of the Resolution Trust/WMFC Mortgage and Discharging Lis Pendens. Therefore, the Hoeys had been successful in their defense of the foreclosure on the Lantern Bay property. On September 28, 2000, the Hoeys executed a mortgage and note in the amount of $215,000 in favor of Francis V. Childs, Gary Fox, Gordon Kenyon, and Rochelle Kenyon ("Childs Group"). The loan was disbursed as follows:

(1) the Internal Revenue Service was paid $87,801.33;

(2) the Palm Beach County Tax Collector was paid $6,682.39; and

(3) outstanding homeowner's association fees on the Hoey's home were paid in the amount of $1,410.57. The remaining loan proceeds were paid to the Hoeys.

Plaintiffs did not receive any portion of the funds received by the Hoeys from the Childs Group mortgage. The mortgage was recorded by the Childs Group on October 17, 2000, at 10:06 a.m., at Official Records Book 12074, page 1282 of the Public Records of Palm Beach County, Florida. Immediately thereafter, on October 17, 2000, at 10:57 a.m., Plaintiffs filed their charging lien on the Lantern Bay property. Plaintiffs' charging lien was recorded on October 20, 2000 at 3:08 p.m. at Official Records Book 12086, page 1652.

On July 11, 2001, Plaintiffs filed their Attorney's Sworn Motion for Summary Judgement on Attorney's Claim to Establish and Enforce Attorney's Charging/Equitable Lien. An Order was entered by the Palm Beach County Circuit Court on August 11, 2001 Granting Final Summary Judgement on Attorney's Claim to Establish and Enforce Attorney's Charging/Equitable Lien thereby establishing a charging lien against the Lantern Bay Property. On September 11, 2001, Ms. Hoey appealed the Order entered by the Circuit Court, which was affirmed by the Fourth District Court of Appeal on June 12, 2002.

On January 22, 2002, James A. Bonfiglio filed a proof of claim in the instant bankruptcy proceeding in the amount of $227,133.14, based upon the charging lien judgment for attorney's fees owed to him for his representation of the Hoeys in the foreclosure action. The issue as to priority of lien previously has been decided by this Court in favor of Plaintiffs, by way of the February 26, 2004 Order Partially Granting Plaintiff's Motion for Partial Summary Judgment as to Count I of the Amended Complaint and Denying the Childs Group's Cross Motion for Summary Judgment (C.P. 79). However, the Childs Group asserts that both equitable subordination and equitable subrogation apply under these circumstances, warranting a determination that the Childs Group should be deemed the holder of a first lien against the sale proceeds. The Court finds only the equitable subrogation argument to be meritorious as to certain of the debts paid by the Childs Group.

■ Equitable subrogation is a well recognized principle of equity jurisprudence. Equitable subrogation arises by operation of law where one pays a debt owed by another under circumstances in which he is in equity entitled to the security held by the creditor whom he has paid. *Fortenberry v. Mandell,* 271 So.2d 170 (Fla. 4th DCA 1972). If the doctrine is applied, the one who has paid the debt is entitled to succeed to all the remedies which the creditor possessed against the original obligor. *Whyel v. Smith,* 101 Fla. 971, 134 So. 552 (1931). In order for the doctrine of equitable subrogation to apply, the party seeking to invoke the doctrine must establish:

(1) that he paid the debt;

(2) that he had a liability, right or fiduciary relationship which equated a direct interest in discharging the debt or lien; and

(3) that injustice will not be visited upon the other party by applying equitable subrogation.

*North v. Albee,* 155 Fla. 515, 20 So.2d 682, 683 (1945).

■ In the instant case, it is without dispute that the debts owed by the debtor to the Internal Revenue Service, the Palm Beach County Tax Collector and the debtor's homeowner's association, were paid with funds obtained from the Childs Group in exchange for a mortgage. Furthermore,

the Childs Group had a direct interest in obtaining assurance that the pre-existing debts which had encumbered the debtor's real property were satisfied from the Childs Group loan proceeds. The third criteria for equitable subrogation specifies that no injustice should be forced upon the other party when applying equitable subrogation. This Court finds that no injustice would be visited upon Plaintiffs by applying equitable subrogation since the debts paid by the debtor with the Childs Group loan proceeds occupied a priority position to Plaintiffs' charging lien. Furthermore, granting equitable subrogation in the instant case would leave intact the original intentions and obligations with respect to the outstanding debts. In essence, Plaintiffs would have been subordinated to the debts that were paid with the Childs Group loan proceeds as to the Internal Revenue Service, the Palm Beach County Tax Collector and the homeowner's association fees for the Hoey's home to the extent of $95,894.29. Therefore, to allow Plaintiffs to occupy the status of the first lienholder, ahead of these three creditors, would result in a significant windfall to Plaintiffs at the Childs Group's expense, and result in a gross inequity. While the Court is cognizant as to the amount paid to resolve the appeal of the WMFC mortgage, i.e. $65,000.00, the court does not consider that debt to fall into the category of a priority debt paid senior to Plaintiffs' charging lien. Consequently, that debt has been excluded in the subrogation analysis.

■ Despite the proof of claim filed in the amount of $227,133.14, Plaintiffs now seek recovery from the sale proceeds of an amount equal to $476,534.58, representing the amount of the initial charging lien plus additional attorney's fees and interest owed for collecting upon the charging lien. The Childs Group argues that Plaintiffs' claim should be limited to $227,133.14, the amount listed in their proof of claim. There is no evidence before the Court that the fees being requested by Plaintiffs are reasonable, as is required under applicable case law. *U.S. v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). Therefore, the Court will not conduct an analysis as to the propriety of granting attorney's fees under 11 U.S.C § 506(b). Rather, Plaintiffs shall be limited to the amount of $227,133.14 listed in their proof of claim. Accordingly, it is

**ORDERED** that the $380,000 in proceeds remaining in the Trustee's possession after the sale of the Lantern Bay property shall be disbursed in the following order:

(1) $40,000 to the Trustee and her counsel as agreed upon in the July 22, 2004 settlement agreement;

(2) $95,894.29 to the Childs Group;

(3) $227,133.14 to James Bonfiglio, Esq.;

(4) any remainder to the Childs Group.

**ORDERED.**