389 So.2d 272 (1980)
RANGER INSURANCE COMPANY, Appellant,
v.
TRAVELERS INDEMNITY COMPANY, Appellee.
No. UU-298.
District Court of Appeal of Florida, First District.
October 7, 1980.
Rehearing Denied November 6, 1980.
*273 E. Harper Field and Susan B. Kirkland of Field, Granger, Santry & Mitchell, Tallahassee, for appellant.
Richard T. Jones of Jones & Langdon, Gainesville, for appellee.
LARRY G. SMITH, Judge.
Ranger Insurance Company appeals the trial court's order dismissing, with prejudice, its complaint against appellee-Travelers Indemnity Company. The two insurance carriers are, respectively, the excess automobile liability insurer and the primary automobile liability insurer for the City of Tallahassee. Ranger's complaint sought to recover against Travelers based upon its contention that Travelers exercised bad faith in failing to settle a claim under Travelers' primary policy insuring the City, as a consequence of which Ranger became liable for and paid funds in settlement of the claim over and above the amount it otherwise would have been required to pay in discharge of its excess liability. The questions presented on appeal are (1) whether an excess carrier has the right, in the absence of a contract or assignment from its insured, to maintain a cause of action against the primary carrier for damages resulting from the primary carrier's bad faith refusal to settle a claim against their common insured; and (2) if such a cause of action is maintainable in Florida, whether the complaint in this instance was sufficient to state a cause of action for bad faith refusal to settle. We have determined that the excess carrier has a cause of action against the primary carrier under the doctrine of "equitable subrogation", and that although the complaint was deficient, it was error to dismiss it with prejudice. We therefore reverse the order of the trial court.
The complaint alleges that Mr. and Mrs. Raker were injured in an automobile accident with a vehicle owned by the City of Tallahassee and driven by one of its employees. Travelers provided primary liability coverage up to $100,000 for one injury. Ranger provided liability coverage for injuries in excess of $100,000. About a month before the scheduled trial of the Rakers' law suit against the City, Mrs. Raker offered to settle for $125,000, and Mr. Raker *274 offered to settle his claim for $75,000. Travelers counter-offered the sum of $30,000 in settlement of the claims of both Mr. and Mrs. Raker.
The complaint alleges further that Travelers failed to make any effort to pursue further negotiations with the Rakers even though Ranger advised Travelers that Ranger would contribute toward a settlement over Travelers $100,000, policy limit. Upon trial of the case Mrs. Raker was awarded damages of $170,000, and Mr. Raker was awarded $37,500, with an additional $1,492.50 court costs. Travelers paid the sum of $100,000 under its policy for Mrs. Raker's damages, and the sum of $38,992.50 for Mr. Raker's damages and costs. Ranger, as it was obligated to do under its insurance policy with the City, paid the excess of $70,000 for Mrs. Raker, together with interest accrued on the judgment.
The allegations of bad faith are that Travelers failed to actively negotiate for settlement with the Rakers until approximately one week prior to trial; its offer of $30,000 for both claims was unreasonable in the light of the Rakers' demand, the liability of the City, the lack of any comparative negligence on the part of Mrs. Raker, and the severity of the damages. The complaint also alleged Travelers' wrongful refusal to accept its own attorney's settlement advice and evaluation of the value of the claims, and possible jury verdict.
Both sides represent that this case is one of first impression in Florida. No appellate court in this state, so far as we have been able to determine, has been called upon to decide whether or not an excess carrier, under the circumstances alleged here, has a cause of action against the primary carrier for alleged bad faith in its settlement or refusal to settle claims under the primary insurance policy. We find, however, that the doctrine of "equitable subrogation," or as it is sometimes referred to, "legal" subrogation-meaning subrogation by operation of law, as opposed to "conventional" subrogation, which arises under an express or implied agreement-is well established in Florida. It was explained and applied, for example, in Allstate Life Insurance Co. v. Weldon, 213 So.2d 15, 18 (Fla. 3rd DCA 1968), in which the court referred to several earlier cases. Boley v. Daniel, 72 Fla. 121, 72 So. 644 (1916), held (72 So. at 645): "Subrogation is the substitution of one person in the place of another with reference to a lawful claim or right." The two distinct types of subrogation are explained in Goodwin v. Schmidt, 149 Fla. 85, 5 So.2d 64 (1941) at 66: "Subrogation is either legal, that is, the right arising by operation of law, or else it is conventional, in which case the right arises by reason of contract between the parties." And the court in Ulery v. Asphalt Paving, Inc., 119 So.2d 432 at 436 (Fla. 1st DCA 1960) stated:
Subrogation, a creation of equity, is founded on the proposition of doing justice without regard to form, and was designed to afford relief where one is required to pay a legal obligation which ought to have been met, either wholly or partially, by another. Trueman Fertilizer Co. v. Allison, Fla., 81 So.2d 734. The right of subrogation has been sustained in almost every conceivable type of action where the party invoking it has been required to pay a debt for which another is primarily answerable, and which in equity and good conscience the other ought to pay... .
Appellant cites substantial and persuasive authority for its position that an excess insurer is entitled to maintain an action against the primary insurer under the circumstances presented here. Peters v. Travelers Insurance, 375 F. Supp. 1347 (C.D.Cal. 1974); Vencill v. Continental Casualty Co., 433 F. Supp. 1371 (S.D.W.Va. 1977); Home Ins. Co. v. Royal Indemnity, 327 N.Y.S.2d 745 (Sup.Ct. 1972); aff'd without opinion, 332 N.Y.S.2d 1003 (App.Div. 1972); Western World Ins. Co. v. Allstate Ins. Co., 150 N.J. Super. 481, 376 A.2d 177 (1977); Estate of Penn v. Amalgamated General Agencies, 148 N.J. Super. 419, 372 A.2d 1124 (1977); Offshore Logistics Services, Inc. v. Awkwright-Boston Mfgs. Mutual Ins. Co., 469 F. Supp. 1099, 1103 n. 7 (E.D.La. 1979); and *275 American Fidelity & Casualty Co. v. All-American Bus Lines, 190 F.2d 234 (10th Cir.1951) reh. denied, cert. denied 342 U.S. 851, 72 S.Ct. 79, 96 L.Ed. 642.
The rationale for finding the existence of a cause of action in behalf of the excess insurer is stated in the well reasoned opinion of the Supreme Court of Minnesota in Continental Casualty Company v. Reserve Insurance Company, 238 N.W.2d 862 (Minn. 1976), at 864:
The threshold question is whether a primary insurer owes any duty to an excess insurer in the settlement negotiation process. It is clear that any liability insurer owes its insured a duty of good faith in deciding whether to accept or reject a settlement. This duty includes an obligation to view the situation as if there were no policy limits applicable to the claim, and to give equal consideration to the financial exposure of the insured. Lange v. Fidelity and Cas. Co. of New York, 290 Minn. 61, 185 N.W.2d 881 (1971). Breach of this duty by rejecting in bad faith an offer within policy limits subjects the insurer to liability to its insured in the amount of a judgment in excess of those limits. Larson v. Anchor Cas. Co., 249 Minn. 339, 82 N.W.2d 376 (1957); Boerger v. American Gen. Ins. Co., 257 Minn. 72, 100 N.W.2d 133 (1959). We hold that an excess insurer is subrogated to the insured's rights against a primary insurer for breach of the primary insurer's good-faith duty to settle. See, Peter v. Travelers Ins. Co., 375 F. Supp. 1347 (C.D.Cal. 1974). As one commentator has observed, "In the case of excess coverage, the primary insurer should be held responsible to the excess insurer for improper failure to settle, since the position of the latter is analogous to that of the insured when only one insurer is involved." R. Keeton, Insurance Law, § 7.8(d). When there is no excess insurer, the insured becomes his own excess insurer, and his single primary insurer owes him a duty of good faith in protecting him from an excess judgment and personal liability. If the insured purchases excess coverage, he in effect substitutes an excess insurer for himself. It follows that the excess insurer should assume the rights as well as the obligations of the insured in that position.
The Minnesota Supreme Court also acknowledged important policy considerations which favor the right of the excess carrier to maintain bad faith actions against the primary carrier. The first of these considerations is the public and judicial interest in fair and reasonable settlement of lawsuits. A second consideration is the avoidance of a result which would permit an unfair distribution of losses among insurers. In this respect the Minnesota Court pointed out that excess and primary policies provide two distinct types of coverage, at different rates, involving different amounts and kinds of risks. Further, that "Whether on insurance-economics principles or general equitable principles, a party should not be made to bear a loss that rightfully belongs to another party." Id. at 865.
The rationale supporting a bad faith cause of action for the excess insurer is succinctly stated in Peters v. Travelers Ins., 375 F. Supp. 1347 (C.D.Cal. 1974), at 1350:
That an excess insurer may recover from the primary for a breach of duty does not increase the duty or the liability of the primary. Under the doctrine of equitable subrogation, the duty owed an excess insurer is identical to that owed the insured. The excess will not be able to force the primary into accepting any settlement which his duty to the insured would not require accepting... . In considering whether it will settle a claim, the primary insurer may consider its own interests, but it must equally consider the interests of the insured, which becomes the interests of the excess insurer by subrogation.
See also Valentine v. Aetna Ins. Co., 564 F.2d 292 (C.A. 9th 1977).
A good example of the need for the application of equitable subrogation to the relationship between a primary and excess liability insurance carrier is demonstrated in Northwestern Mutual Insurance Co. v. *276 Farmers Insurance Group, 76 Cal. App.3d 1031, 143 Cal. Rptr. 415, 425 (1978):
... denying recovery, that is, relieving a primary insurer of its duty to effect reasonable settlement where excess coverage exists, would tend to deter settlements... . It would give the primary insurer a disincentive to settle, particularly when the proposed settlement was near, at or in excess of primary's policy limits. This may be illustrated by assuming a case in which the primary policy limit is $20,000, the excess policy limit is $50,000, the reasonable settlement offer is $18,000, liability is likely but not certain, and the damages are such that, if recovery is had, it will likely be in an amount well in excess of the primary policy limit. In such a situation, if the primary insurer is not faced with the possibility of liability for bad faith failure to effect settlement, it will have at risk only $2,000 if it refuses to settle for $18,000 and proceeds to trial on the possibility of a favorable judgment. If the reasonable settlement offer were $20,000, it would risk nothing at all by going to trial.
We find no merit in appellee's contention that an excess carrier's action against the primary carrier for bad faith in settlement must be based upon a contract. It is true, as appellee contends, that bad faith actions are grounded upon contractual rights. Government Employees Insurance Co. v. Grounds, 332 So.2d 13 (Fla. 1976). However, as appears from the foregoing discussion a cause of action based upon equitable subrogation is not dependent upon the existence of a contract between the plaintiff and the defendant. Allstate Life Ins. Co. v. Weldon, supra. For additional cases see Right to subrogation as against primary insurer, of liability insurer providing secondary insurance, 31 A.L.R.2d 1324. Appellee cites Universal Underwriters Insurance Company v. Dairyland Mutual Insurance Company, 102 Ariz. 518, 433 P.2d 966 (1967), expressing a contrary view, which was applied by the United States Court of Appeals in Rocky Mountain Fire and Casualty Company v. Dairyland Insurance Company, 452 F.2d 603 (9th Cir.1971) (construing Arizona law). Although the Arizona Supreme Court recognized the primary insurer's duty of good faith to its insured, the court found:
There is no privy [sic] of contract between these two insurance companies nor is there any principle of law which we are aware that would give Universal such a windfall because of Dairyland's mistreatment of its assured... .
Since the Arizona court did not discuss the doctrine of equitable subrogation we may assume that remedy is not recognized in Arizona (although it clearly is in Florida), or if it is recognized, was not considered as a proper remedy under the circumstances. It is noted, however, that although the Arizona court refused to allow a bad faith action by the excess carrier, it allowed recovery by Universal (the excess carrier) against Dairyland (the primary carrier) on the theory that "where two companies insure the same risk and one is compelled to pay the loss, it is entitled to contribution from the other."
We further find no merit in appellee's contention that equitable subrogation is not available because, by application of Section 768.28(5), Florida Statutes (1975), the sovereign immunity statute, the City is liable for damages only up to the amount of $100,000. Appellee argues that since Ranger's rights can be no greater than the City's, the City actually has no excess exposure upon which to base a right of action for bad faith to which Ranger can be subrogated. We observe, first, that if we accepted appellee's argument that the City has no excess exposure, then of course it could have no excess insurance. Secondly, appellee's contention in this respect overlooks Section 768.28(10), Florida Statutes (1975), which provides for waiver of sovereign immunity to the extent that the City has purchased excess coverage. See Circuit Court, etc. v. Dept. of Nat. Resources, 339 So.2d 1113 (Fla. 1976).
Finally, as to appellee's contention that the complaint fails to state a cause of action for bad faith against the insurer, we conclude that the allegations are sufficient *277 to show a disregard of the City's interests, and a causal connection between Traveler's actions and loss or damage allegedly suffered by Ranger. We do not agree with appellee that the complaint is deficient because it fails to allege the existence of an offer by the person claiming against the insured to settle within the policy limits. See American Fidelity Fire Ins. Co. v. Johnson, 177 So.2d 679 (Fla. 1st DCA 1965). As stated in Thomas v. Western World Insurance Co., 343 So.2d 1298, 1302 (Fla. 3rd DCA 1977), reh. denied, cert. dismissed Fla., 349 So.2d 955, under some circumstances the offer of settlement is not a prerequisite to excess liability. In Thomas, an insurer wrongfully refused to defend the insured, so that there was no offer within the policy limits, yet suit was allowed. In Davis v. Nationwide Mutual Fire Insurance Co., 370 So.2d 1162 (Fla. 1st DCA 1977), no offer was made because an insurance attorney misrepresented the policy limits to the injured party, negligent driver, and car owner. In Valentine v. Aetna Ins. Co., supra, the trial court found that the personal injury litigation could have been settled for $500,000, even though the last demand before negotiations broke off was for $750,000, where the circumstances indicated that the personal injury plaintiff would have been willing to take less. Since the jury verdict in Valentine was $700,000, there was found to be damages of $200,000 because of the insurer's breach of its duty to negotiate and settle in good faith.
The complaint here alleges the existence of an offer of settlement by the injured parties, and Ranger's offer to contribute toward that settlement so that Travelers' contribution would not exceed its $100,000 policy limit. The language of the complaint on this point is lacking in specificity. We think it is essential, consistent with the authorities cited in support of appellant's position, for the excess carrier to allege that it offered to contribute a specific sum for which settlement could have been made, or that it was ready and willing to contribute, and offered to contribute an indefinite amount which, together with Travelers' primary coverage of $100,000, would have produced a settlement at a figure less than Ranger was ultimately required to pay. We do not foreclose the possibility, if such be the case, that a cause of action might still be maintained if Ranger can allege and prove that its failure to communicate to Travelers an offer meeting these requirements should be excused as an exercise in futility because of Travelers unresponsive attitude. Even in such event, it would appear necessary to allege that Ranger was ready and willing to contribute an amount for which settlement could have been made. See Valentine, supra. Therefore, although we agree that the complaint was deficient, we determine that it was error to dismiss the complaint with prejudice, where there had been no prior dismissal without prejudice, since it is not apparent that the pleading cannot be amended so as to state a cause of action. Sapp v. City of Tallahassee, 348 So.2d 363, 366 (Fla. 1st DCA 1977); Hansen v. Central Adjustment Bureau Incorporated, 348 So.2d 608, 610 (Fla. 4th DCA 1977); and Anthony v. Jacksonville Transportation Authority, 383 So.2d 650 (Fla. 1st DCA 1980).
Although we have indicated the possibility of an amended complaint being filed by Ranger, we caution that in so doing we are not ruling as a matter of law that any specific set of facts and circumstances would or would not be sufficient for recovery, since ordinarily this is a matter which must be determined by the jury. Campbell v. Government Employees Insurance Co., 306 So.2d 525, 85 A.L.R.3d 1200 (Fla. 1974).
The order dismissing the complaint with prejudice is REVERSED, and the cause is REMANDED for further proceedings.
ERVIN and SHIVERS, JJ., concur.