WARNER, J.
 

 Appellant, Vigilant Insurance Company, an excess insurer, appeals an order dismissing its complaint for bad faith against Continental Insurance Company, the primary insurer. The trial court determined that Vigilant, which paid a settlement for the insured, could not recover as a matter of law on a bad faith claim against Continental, the primary insurer, because the injured party had released the insured, and Vigilant did not receive an assignment from the insured of any bad faith claim. We hold that neither the release of the insured, nor the lack of assignment of rights from the insured, bars the excess insurer’s bad faith claim in this case. Accordingly, we reverse.
 

 Joe Hutchinson was injured while using a wood chipper which was manufactured by Garden Way. At that time, Garden Way had primary liability insurance with Continental, in the amount of $1 million subject to a $500,000 self-insured retention (“SIR”).
 
 [1]
 
 Garden Way also had excess liability coverage under a policy with Vigilant in the amount of $25 million. Hutchinson sued Garden Way in 1998 for products liability and negligence. Vigilant alleged that Continental advised Vigilant that Continental’s limit was $1 million and that there was self-insured retention of $500,000. Continental informed Vigilant that the claim was within its limit of liability and advised Vigilant that Vigilant could close its file.
 

 
 *736
 
 Without going through all of the demands, rejections, and settlement negotiations, it is sufficient for the purposes of this opinion to note that Hutchinson made demands for settlement within the SIR and primary insurance policy which Continental rejected without providing any notification to Vigilant. By the time Continental again contacted Vigilant after three years of litigation, Hutchinson was demanding amounts in excess of the primary policy and remaining SIR, requiring contribution from Vigilant. After several letters in which Continental did not inform Vigilant of its exact exposure, Continental finally wrote to Vigilant and for the first time took the position that the $1 million aggregate carried under the policy had been eroded to the extent of $530,000 which included the self-insured retention. This meant that Continental’s policy plus the SIR would not cover the whole cost of settlement. At that point Continental suggested that Vigilant take over the defense or settlement. Continental offered Vigilant $500,000 to enable Vigilant to settle the matter, conditioned upon Vigilant releasing Continental from all claims.
 

 Hutchinson’s claim was settled for $1.7 million with Continental paying $469,494 and Vigilant paying $1,230,506. Garden Way did not pay any of the SIR. Hutchinson executed a release and settlement which provided for the release and discharge of Garden Way, Continental and Vigilant. Vigilant did not obtain an assignment of any bad faith claim Garden Way may have had against Continental before the release was executed.
 

 Vigilant sued Continental for bad faith and promissory estoppel because Vigilant was required to pay more than $1.2 million in excess coverage when it contended that Hutchinson’s claim should have been paid at a time when it could have been settled within Continental’s policy limit. Vigilant contends that Continental led Vigilant to believe that Continental’s $1 million policy limit was in addition to the self-insured retention and was sufficient to cover Hutchinson’s claim.
 
 [2]
 

 Continental moved to dismiss the promissory estoppel claim, asserting that Vigilant had an adequate remedy in the form of a bad faith claim. Continental also contended that there was no promissory es-toppel as.a matter of law. The trial court dismissed the promissory estoppel count without prejudice, giving Vigilant fifteen days to amend. Vigilant did not amend.
 

 Continental also moved for summary judgment on the bad faith claim on two bases. First, Continental maintained that because Hutchinson released Garden Way as to all claims in the underlying litigation without any assignment of a bad faith claim to Vigilant, Vigilant could not maintain a claim for bad faith against Continental. Second, Continental argued that because an excess judgment was never entered in the underlying litigation, Vigilant could not state a claim against Continental.
 

 The trial court orally granted summary judgment for Continental because: 1) Garden Way was released without paying any of the settlement out of its own pocket;
 
 *737
 
 and 2) there could be no bad faith claim where the underlying claim ended in settlement. The trial court relied on
 
 Fidelity and Casualty Co. of New York v. Cope,
 
 462 So.2d 459 (Fla.1985), and
 
 Auto-Owners Insurance Co. v. American Yachts, Ltd.,
 
 492 F.Supp.2d 1879 (S.D.Fla.2007). We conclude that
 
 Cope
 
 does not apply to these facts, and
 
 American Yachts,
 
 a federal case, is not controlling and was wrongly decided.
 

 The appellate court reviews orders granting summary judgment de novo.
 
 Volusia County v. Aberdeen at Ormond Beach, L.P.,
 
 760 So.2d 126 (Fla.2000).
 

 In
 
 RLI Insurance Co. v. Scottsdale Insurance Co.,
 
 691 So.2d 1095 (Fla. 4th DCA 1997), we determined both that an excess insurer could bring a bad faith claim against the primary insurer and that an excess judgment was not a prerequisite to the claim. Instead, an action could be based upon a settlement executed by the excess insurer. Specifically, we explained:
 

 It is well settled that an excess insurer is entitled to maintain a common law bad faith action against a primary insurer.
 
 Ranger Ins. Co. v. Travelers Indem. Co.,
 
 389 So.2d 272 (Fla. 1st DCA 1980);
 
 General Acc. Fire & Life Assur. Corp. v. American Cas. Co. of Reading, Pa.,
 
 890 So.2d 761 (Fla. 3d DCA 1980),
 
 rev. denied,
 
 399 So.2d 1142 (Fla.1981);
 
 Phoenix Ins. v. Florida Farm Bureau Mut. Ins. Co.,
 
 558 So.2d 1048 (Fla. 2d DCA 1990). In each of these cases, it was held that a primary insurer has the same duty to exercise good faith to an excess insurer as it does to an insured.
 

 Id.
 
 at 1096. We also relied on
 
 North American Van Lines, Inc. v. Lexington Insurance Co.,
 
 678 So.2d 1325 (Fla. 4th DCA 1996), where we held that an
 
 insured
 
 was not required to suffer an excess judgment in order to sue for bad faith refusal to settle. The
 
 RLI
 
 court stated:
 

 When a primary insurer is in bad faith for refusing to settle, the excess carrier is in essentially the same position as that of an insured.
 
 See Ranger; Morrison; North American.
 
 Accordingly, if the insured in
 
 North American
 
 did not have to expose itself to a judgment in order to bring a bad faith action, it follows that this excess carrier should not have to either.
 

 Id.
 
 at 1096 (footnote omitted).
 

 In
 
 Ranger Insurance Co. v. Travelers Indemnity Co.,
 
 389 So.2d 272 (Fla. 1st DCA 1980), on which
 
 RLI
 
 relied, the court stated that the question presented on appeal was:
 

 (1) whether an excess carrier has the right,
 
 in the absence of a contract or assignment from its insured,
 
 to maintain a cause of action against the primary carrier for damages resulting from the primary carrier’s bad faith refusal to settle a claim against their common insured; ...
 

 Id.
 
 at 273 (emphasis supplied). The court answered the question by determining that the excess carrier had a cause of action under a theory of equitable subrogation, and no assignment was necessary. The court explained:
 

 We find no merit in appellee’s contention that an excess carrier’s action against the primary carrier for bad faith in settlement must be based upon a contract. It is true, as appellee contends, that bad faith actions are grounded upon contractual rights.
 
 Government Employees Insurance Co. v. Grounds,
 
 332 So.2d 13 (Fla.1976). However, as appears from the foregoing discussion a cause of action based upon equitable subrogation is riot dependent upon the existence of a contract between the plaintiff and the defendant.
 

 Id.
 
 at 276. In essence, the excess insurer steps into the shoes of the insured with
 
 *738
 
 respect to a claim for bad faith against the primary insurance company.
 
 See id.
 
 at 274-76;
 
 see also Progressive Am. Ins. Co. v. Nationwide Ins. Co.,
 
 949 So.2d 293 (Fla. 1st DCA 2007) (stating that the primary carrier owes a duty of good faith to an excess carrier based on equitable subrogation principles).
 

 While the trial court relied on
 
 Cope,
 
 that case is distinguishable. In
 
 Cope,
 
 a party, Mr. Cope, was involved in an automobile accident caused by Mr. Brosnan, who was driving a vehicle owned by Ms. Gehan. The accident injured Mr. Cope and killed his wife. Cope recovered a judgment against Brosnan and Gehan for $100,000 on behalf of his wife’s estate. Brosnan and Gehan each had minimal insurance policies with different insurers, providing $10,000 in coverage. After recovering the judgment, both insurance companies paid their policy limits, but Cope sued Gehan’s insurance company, Hartford, for bad faith refusal to settle based upon various settlement offers made prior to trial. Hartford settled this suit with Cope for $50,000 in return for a release in favor of Hartford, Gehan and Brosnan. Fidelity, Brosnan’s insurer, was not included in the release. Cope then sued Fidelity for the remaining $30,000 due on the judgment, after deduction of the Hartford settlement and the original two policy limits. The trial court found that Fidelity had acted in bad faith during settlement negotiations and ordered it to pay $30,000 to Cope, rejecting Fidelity’s argument that the release of Brosnan barred any subsequent bad faith action against Fidelity.
 

 The Florida Supreme Court ultimately disagreed. Because Cope had given a release which included Brosnan, thus satisfying the judgment, Cope could not recover against Brosnan’s insurance company. The court held:
 

 We hold that if an excess judgment has been satisfied, absent an assignment of that cause of action prior to satisfaction,
 
 a third party
 
 cannot maintain action for a breach of duty between an insurer and its insured.
 

 Cope,
 
 462 So.2d at 461 (emphasis added). Cope had a judgment against Brosnan. Brosnan had a claim against his insurance company for bad faith, because he had suffered damage in the form of the entry of the judgment against him. However, when Cope released Brosnan from the judgment in settling with Hartford, Bros-nan could no longer maintain a claim against his own insurance company, because he was no longer damaged. As the court said:
 

 An essential ingredient to any cause of action is damages. In this case Bros-nan originally suffered a judgment in excess of his policy. Before this action was filed, however, the judgment was satisfied. Upon its being satisfied Bros-nan no longer had a cause of action; if he did not, then Cope did not.
 

 Cope,
 
 462 So.2d at 461. Thus, Cope’s holding was based upon the lack of damage to the insured, once the judgment against him was satisfied.
 

 The reasoning of
 
 Cope,
 
 however, does not apply when an insured pays the judgment, or an excess insurer pays the judgment for the insured, as a consequence of the bad faith conduct of the primary insurer. In such a case, the insured, or the excess insurer standing in the shoes of the insured, is damaged because it has paid the judgment. It has paid money that it should not have been required to pay, absent the primary insurer’s bad faith. Obviously, in settling the underlying claim or paying a judgment, the party paying to resolve the claim (whether the insured or an excess carrier) is going to secure the release of the in
 
 *739
 
 sured and a satisfaction of any judgment.
 
 Cope
 
 does not stand for the proposition that by doing so, the insured would lose its bad faith claim against the primary insurance company. Where the insured or its excess insurance company pays or settles the claim against the insured in an amount exceeding the primary limits, it has been damaged. Obtaining a release from the third party under those circumstances does not eliminate the damage that the insured or its excess insurance carrier has suffered.
 
 Cope
 
 applies to a release of a judgment by the injured party as preventing the injured party (third party) from pursuing the insurer of the judgment debt- or.
 
 Cope
 
 does not apply to the insured suing its own insurance company for bad faith, as the insured has not released anyone from such liability. Likewise,
 
 Cope
 
 does not apply to extinguish an excess carrier’s bad faith claim against the primary carrier simply because the injured party released the insured.
 

 In this case, only Hutchinson released the insured, Garden Way. While that release would prevent Hutchinson from suing Vigilant or Continental on bad faith refusal to settle, Garden Way did not release any potential claim it had for such an action. Only if Garden Way had released Continental as to any claims might the release have affected Vigilant’s ability to make a claim against Continental.
 

 Because
 
 Cope
 
 does not apply to this case and both
 
 Ranger
 
 and
 
 RLI
 
 provide that Vigilant has a cause of action against Continental based upon the allegations of the complaint, we reverse the trial court’s order dismissing Vigilant’s complaint. We remand for further proceedings.
 

 As we are reversing the final judgment in favor of Continental, we also reverse the final judgment awarding attorney’s fees to Continental.
 

 Reversed and remanded for further proceedings.
 

 POLEN and STEVENSON, JJ„ concur.
 

 [1]
 

 . Black's Law Dictionary defines a self-insured retention as: "The amount of an otherwise-covered loss that is not covered by an insurance policy and that usually must be paid before the insurer will pay benefits...." Black's Law Dictionary 1391 (8th ed. 2004). Thus, the self-insurance amount was the amount that Garden Way had to pay before Continental was required to pay. It appears to be comparable to a deductible.
 

 [2]
 

 . The crux of Vigilant's suit against Continental is that Continental represented that Hutchinson's claim would be within Continental’s limit of $1,000,000. Vigilant contends that Continental told Vigilant that the coverage limit excluded the self-insured retention amount, and later it changed position to say that that amount actually included the self-insured retention amount. Vigilant relied on these representations and by the time Continental changed its position and told Vigilant that the $1,000,000 coverage limit included the self-insurance amount, Hutchinson’s claim had ballooned from $400,000 to $1.7 million.