[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-12932
_____

D.C. Docket No. 1:12-cv-21758-FAM

WESTCHESTER FIRE INSURANCE
COMPANY,
a foreign corporation,

Plaintiff - Appellee
Cross Appellant,

versus

MID-CONTINENT CASUALTY COMPANY,
a foreign corporation,

Defendant - Appellant
Cross Appellee.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(June 19, 2014)

Before HULL, COX and FARRIS,[*] Circuit Judges.

PER CURIAM:

In this insurance dispute, Westchester Fire Insurance Company ("Westchester") sued Mid-Continent Casualty Company ("Mid-Continent") asserting a bad-faith claim under Florida law. According to Westchester, Mid-Continent (as primary insurer) acted in bad faith towards Westchester (the excess insurer) by failing to settle a case.[1] After a bench trial, the district court found that Mid-Continent had acted in bad faith and entered a $390,173 judgment. Mid-Continent appeals raising several issues and Westchester cross-appeals. We reverse.

---

[*] Honorable Jerome Farris, United States Circuit Judge for the Ninth Circuit, sitting by designation.

[1] As explained by the Supreme Court of Florida:

> A fourth recognized [bad-faith claim] involves a claim not of the insured or the third-party claimant, but of the excess carrier, which may bring a bad-faith claim against a primary insurer by virtue of equitable subrogation under certain circumstances where the primary insurer has not acted in good faith. Under the doctrine of equitable subrogation, an excess insurer has the right to "maintain a cause of action . . . for damages resulting from the primary carrier's bad faith refusal to settle the claim against their common insured." *U.S. Fire Ins. Co. v. Morrison Assurance Co.*, 600 So. 2d 1147, 1151 (Fla. 1st DCA 1992) (citing *Ranger Ins. Co. v. Traveler's Indem. Co.*, 389 So. 2d 272 (Fla. 1st DCA 1980)). The reasoning of the equitable subrogation cases is that the primary insurer is "held responsible to the excess insurer for improper failure to settle, since the position of the latter is analogous to that of the insured when only one insurer is involved." *Id.*

*Perera v. U.S. Fidelity & Guar. Co.*, 35 So. 3d 893, 900 (Fla. 2010).

## I. Facts and Procedural History

This appeal and cross-appeal derive from an underlying products liability suit in state court.[2]   Both insurers in this case issued policies to Continental Manufacturing, Inc. ("Continental").   Mid-Continent issued a $1 million dollar primary insurance policy.   And, Westchester issued a $5 million dollar excess policy.

Continental was sued for products liability in Florida state court.   The Plaintiff in the state court suit, Jesus Pillado, claimed he suffered several injuries—including brain damage and fractured vertebrae—while operating one of Continental's concrete mixer trucks.   Pillado alleged damages exceeding $1 million.

Continental tendered the suit to its insurers and Mid-Continent provided a defense.   From an early point in the litigation, Westchester demanded that Mid-Continent settle the case.   Throughout the litigation, Mid-Continent and the defense counsel made several attempts to settle, but no settlement was reached. Pillado's lowest settlement offer of $1,000,000 was still far above Mid-Continent's settlement range of $150,000-$350,000.   Following a trial, the jury returned a verdict in favor of Pillado awarding him $1,705,173 in damages.

---

[2] We relate the facts briefly.  A more detailed recitation of the facts of the underlying suit may be found in the district court's opinion.  *See Weschester Fire Ins. Co. v. Mid-Continent Cas. Co.*, 954 F. Supp. 2d 1374 (S.D. Fla. 2013).

Despite this verdict, the defense counsel believed that the net award in the case would not exceed $1.6 million due to a setoff from a worker's compensation lien that Mid-Continent had purchased. About two weeks after the verdict, Pillado offered to settle the case for $1.6 million dollars. Mid-Continent did not inform Westchester of this offer, but asked the defense counsel to decline the settlement the next day, stating that it was "no deal for us." Ultimately, the state court chose not to permit a setoff for the worker's compensation lien and awarded Pillado $285,000 in costs. The total judgment in the case was $1,990,173, consisting of the $1,705,173 verdict and $285,000 in costs. Because the costs were the primary carrier's obligation, Westchester incurred an excess exposure of $705,173.

Following the state court litigation, Westchester brought this suit against Mid-Continent alleging that Mid-Continent acted in bad faith by refusing to settle Pillado's claim. The district court conducted a two day bench trial on Westchester's claim. After the trial, the court stated in its findings and conclusions that Mid-Continent's pre-verdict activities did not constitute bad faith. However, the district court held that Mid-Continent acted in bad faith by failing to notify Westchester of the post-verdict settlement offer. After the verdict, it was clear that any result in the case could include exposure exceeding $1 million. Yet, Mid-Continent did not inform or confer with Westchester before rejecting the post-verdict settlement offer. Accordingly, the district court found that Mid-Continent

4

acted in bad faith and awarded Westchester damages representing the difference between what Westchester would have paid under the $1.6 million dollar settlement and the final judgment. The district court entered a $390,173 judgment in favor of Westchester. Mid-Continent appeals and Westchester cross-appeals.

## II. Issues on Appeal

Mid-Contintent raises three issues on appeal. First, Mid-Continent contends the district court erred by allowing Westchester to amend the pleadings to conform to evidence of post-verdict bad faith presented at trial. Second, Mid-Continent contends that the district court erred by finding that Mid-Continent acted in bad faith post-verdict. Third, Mid-Continent contends that the district court erred by awarding damages without finding causation. On cross-appeal, Westchester raises one issue: that the district court erred by finding that Mid-Continent did not act in bad faith before and during the trial.

## III. Standards of Review

We review the district court's decision to grant leave to amend the pleadings to conform to the evidence for an abuse of discretion. *Diaz v. Jaguar Restaurant Group, LLC*, 627 F.3d 1212, 1214 (11th Cir. 2010). We review a district court's factual findings for clear error. *Fischer v. S/Y Neraida*, 508 F.3d 586, 592 (11th Cir. 2007). We review de novo the legal issue of whether damages can be awarded

5

without a finding of causation.  *Mitchell v. Hillsborough Cnty.*, 468 F.3d 1276, 1282 (11th Cir. 2006).

## IV. Discussion

### A. The district court did not clearly err by finding that Mid-Continent did not act in bad faith before and during trial.

On cross-appeal, Westchester contends that the district court erred by finding that Mid-Continent did not act in bad faith before or during trial.  Because Westchester challenges the district court's factual finding that Mid-Continent did not act with bad faith before or during trial, we review for clear error.  *See Fischer*, 508 F.3d at 592.

Westchester's main contention is that Mid-Continent should have offered more money in settlement and at an earlier time in the proceedings.  The district court considered this argument and the evidence presented and found that Mid-Continent did not act in bad faith.  The court noted that Mid-Continent reasonably calculated and offered settlement amounts based on the results of two mock trials and the defense counsel's estimation of the case.  Westchester argues that the district court's conclusion that Mid-Continent did not act in bad faith was in error.  However, Westchester presents no reason why the district court's fact finding is clearly erroneous.  We hold the district court did not clearly err by finding that Mid-Continent did not act in bad faith prior to and during the trial.

**B. The district court erred by awarding damages without any proof of causation.**

Based on its finding of bad faith, the district court awarded Westchester $390,173 in damages. This is the amount Westchester would have saved *if* Mid-Continent and Westchester had accepted Pillado's post-verdict settlement offer. On appeal, Mid-Continent contends that the district court erred by awarding damages without finding that Mid-Continent caused any injury to Westchester. Furthermore, Mid-Continent contends that no evidence proves that Westchester would have accepted the settlement even if it had been properly informed of the offer.

We have previously certified a question to the Supreme Court of Florida asking whether damages can be awarded in a bad faith claim without a finding of causation. In response, the Supreme Court of Florida held that a valid bad faith claim must show "a causal connection between the damages claimed and the insurer's bad faith." *Perera v. U.S. Fid. & Guar. Co.*, 35 So. 3d 893, 903–04 (Fla. 2010). The court emphasized that the existence of a causal connection is a prerequisite to a valid claim—in other words, "the claimed damages must be caused by the bad faith." *Id.* at 901.

In this case, the district court never found that Mid-Continent's failure to communicate the settlement offer caused any damage to Westchester. Furthermore, Westchester is unable to identify any evidence in the record showing

7

it has incurred an obligation that it should not have been required to pay, absent the primary insurer's bad faith. *See Vigilant Ins. Co. v. Cont'l Cas. Co.*, 33 So. 3d 734, 738 (Fla. 4th DCA 2010). Westchester claimed at oral argument that its previous pre-verdict requests for settlement are sufficient proof that it would have accepted the post-verdict settlement. We are not convinced. Many of these pre-verdict demands were nothing more than *pro forma* demands for Mid-Continent to settle within its policy limits. And, even though Westchester did offer to contribute to a settlement pre-verdict, this is a vastly different situation than that post-verdict. In its brief, Westchester does not even contend that it would have accepted the post-verdict settlement offer. After reviewing the record, we see no evidence or testimony that Westchester would have accepted the post-verdict settlement offer. Accordingly, the district court erred by finding that Mid-Continent was liable on the bad faith claim without proof that Mid-Continent caused any injury to Westchester.

Because we reverse the district court's judgment on this basis, we need consider neither Mid-Continent's contentions that the district court erred by allowing Westchester to amend the pleadings to conform to the evidence at trial nor the district court's holding that Mid-Continent acted in bad faith post-verdict.

## V. Conclusion

The district court did not clearly err by finding that Mid-Continent did not act in bad faith before and during trial. However, the district court erred by holding that Westchester had established a valid bad-faith claim and awarding damages without any proof of causation. Accordingly, we reverse the judgment in favor of Westchester and remand with instruction that the court enter judgment in favor of Mid-Continent.

**REVERSED AND REMANDED WITH INSTRUCTION.**